GISKAN SOLOTAROFF & ANDERSON LLP
90 Broad Street, 10th Floor
New York, New York 10004
(646) 964-9640
Jason L. Solotaroff
Amy Robinson
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

JOHN P. MAHER,

                        Plaintiff,                      **COMPLAINT**

      -against-                                        Dkt. No.

NASSAU HEALTH CARE CORPORATION,

                        Defendant.

------------------------------------------------------------------------X

Plaintiff John P. Maher, by his attorneys Giskan Solotaroff & Anderson LLP, for his complaint against Defendant Nassau Health Care Corporation ("NHCC"), alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for unlawful retaliation in violation of the False Claims Act, 31 U.S.C. § 3729(h), and N.Y. Labor Law § 740, and breach of contract.

2. Mr. Maher was employed from January 1, 2012, until he was terminated, effective June 12, 2020, as Executive Vice-President and Chief Financial Officer at Defendant NHCC, the public benefit corporation that operates the Nassau University Medical Center and other health care facilities in Nassau County.

3. In January 2020, Robert Detor became Chairman of NHCC.

4. In April 2020, NHCC applied for a grant from the federal government program that provided funds to health care providers for services provided to COVID-19 patients. The grant application required NHCC to specify the number of COVID-19 positive patients.

5. Mr. Maher was involved in preparing the grant application, including overseeing a process to ascertain the right number of COVID-19 positive patients. That process, which utilized multiple data points, identified 625 COVID-19 patients. Mr. Maher confirmed with NHCC's health care consultants that the process was correct.

6. Before the grant was to be submitted, NHCC's general counsel and chief compliance officer informed Mr. Maher, per the hospital consultants, that the number of COVID-19 positive patients should be increased to 900. Mr. Maher then communicated with the consultants again who advised him that the original process to determine the number of 625 COVID-19 positive patients was accurate and should be used. When Mr. Maher reported this to NHCC's general counsel and chief compliance officer, she directed him again to certify that there were 900 COVID-19 positive patients.

7. On April 24, 2020, Mr. Maher received an email from Mr. Detor, which accused Mr. Maher of not being a team player. In the ensuing correspondence, Mr. Maher explained that it did not appear the higher number could be justified. In response, Mr. Detor stated in an email dated April 25, 2020 that it was in NHCC's "best interest to be in the position of asking for forgiveness and not permission." In a telephone conversation later that day, Mr. Detor yelled at Mr. Maher and told him that his whistleblowing would not be tolerated and would be one of the reasons he would be fired.

8. NHCC proceeded to include the higher number of 900 COVID-19 positive patients in its grant application which, according to Mr. Detor, resulted in NHCC receiving an additional $20 million from the federal government.

9. On May 14, 2020, two days after counsel for Mr. Maher sent a letter to NHCC's general counsel and chief compliance officer notifying NHCC of Mr. Maher's whistleblower retaliation claims, Mr. Detor informed Mr. Maher that NHCC had suspended his employment.

10. On June 11, 2020, Mr. Detor informed Mr. Maher that NHCC had terminated his employment, effective June 12, 2020.

11. NHCC breached Mr. Maher's employment agreement by failing to provide Mr. Maher the 365-day notice period required under the agreement where the termination was, as it was here, without cause.

## THE PARTIES

12. Plaintiff Maher is domiciled in Nassau County, New York.

13. Defendant Nassau Health Care Corporation is a public benefit corporation organized under the laws of New York with its principal place of business in Nassau County.

## VENUE AND JURISDICTION

14. This Court has jurisdiction over Mr. Maher's federal False Claims Act retaliation claim pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over Mr. Maher's claims under the New York Labor Law and the New York State Human Rights Law, as well as over Mr. Maher's breach of contract claim, pursuant to 28 U.S.C. § 1367.

15. Venue is properly before this Court pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to the claim occurred in this District.

16. This Court has personal jurisdiction over Defendant because it operates its business in New York State and employed Plaintiff within New York State.

## FACTS

### A. Mr. Maher's Background and Accomplishments at NHCC.

17. Mr. Maher received a B.S. degree in Accounting from Providence College and a master's degree in Health Policy and Management from Columbia University's School of Public Health.

18. Since 1982, Mr. Maher has held a number of senior finance and management executive positions at hospitals throughout the New York metropolitan area. In January 2012, Mr. Maher was hired as NHCC's Deputy Executive Director, Executive Vice-President for Finance and Operations, and Chief Financial Officer.

19. At the time Mr. Maher joined NHCC, he executed an employment agreement, standard for senior executives at the corporation, which required 365 days' paid notice if NHCC terminated him without cause.

20. From January 2012 until January 2020, Mr. Maher was universally considered a strong performer in his role. Mr. Maher never received a negative performance review and was responsible for increasing revenue, improving credit review procedures, modernizing operations, and salvaging over $40 million in state grants, among other accomplishments.

### B. Detor Retaliates Against Mr. Maher for his Efforts to Ensure the Truthfulness of NHCC's Application for Federal COVID-19 Funds.

21. In January 2020, Robert Detor was appointed chairman of NHCC's board of directors.

22. In mid-April 2020, NHCC began planning to submit an application under the CARES Act to obtain significant federal funds from the United States Department of Health and Human Services ("HHS") in connection with NHCC's treatment of COVID-19 patients.

23. In the context of the CARES Act application, both Mr. Maher and Mr. Detor had a fiduciary obligation to ensure that NHCC – as a grantee of federal funding – submitted strictly accurate information.

24. The HHS attestation required NHCC to certify "that all information (including admission data) it provides as part its application for the Payment, as well as all information and reports relating to the Payment that it provides in the future at the request of the Secretary or Inspector General, are true, accurate and complete, to the best of its knowledge."

25. NHCC was required to "acknowledge that any deliberate omission, misrepresentation, or falsification of any information contained in this Payment application or future reports may be punishable by criminal, civil, or administrative penalties, including but not limited to revocation of Medicare billing privileges, exclusion from federal health care programs, and/or the imposition of fines, civil damages, and/or imprisonment."

26. A central item of information required for the application was a headcount of COVID-19-positive patients under NHCC's care.

27. To calculate the headcount, Mr. Maher worked closely with NHCC's Departments of Quality Assurance, Infection Control, Laboratories and Information Systems to devise a precise process to count patients including those who had not been tested for COVID-19 but, due to a specific data set of symptoms (including detailed laboratory results, documented

infectious disease comments, and physician progress notes), could justifiably be characterized as positive and therefore included in the headcount to HHS.

28. This exacting process identified 625 COVID-19-positive patients. Mr. Maher also confirmed with a consulting agency, Alvarez & Marsal ("A&M"), that the methodology was appropriate and that the patient count was accurate.

29. On April 23, 2020, before the deadline for the HHS submission, Megan Ryan, NHCC's chief compliance officer and general counsel, advised Mr. Maher that the deadline had been extended, and the NHCC should submit an increased headcount of 900 COVID-19 positive patients.

30. Ms. Ryan provided no details for the increase other than to say that Richard Cascio of A&M had called for the significant increase in the headcount of COVID-19 positive patients.

31. Mr. Maher was concerned in that HHS had provided guidance, at the time it extended the deadline for applications, that "the number of admissions you submit…should reflect admissions with positive tests and should not include presumptive cases."

32. Mr. Maher called Mr. Cascio – one of NHCC's primary contacts at A&M – to confirm that NHCC's original methodology for counting COVID-19-positive patients was correct. Contrary to Ms. Ryan's representation, Mr. Cascio confirmed that the original methodology was right, and that NHCC should submit the original count of 625.

33. Mr. Maher reported this conversation to Ms. Ryan, who reiterated her request, with visible discomfort, to submit the headcount of 900 COVID-19-positive patients, with again no justification for the increased headcount.

34. On April 24, 2020, Mr. Maher received an email from Mr. Detor stating that he had received feedback that Mr. Maher was "not being a team player with regard to [the COVID-19 funds] submission."

35. Mr. Maher replied to this email the same evening. Mr. Maher explained that that he was a team player, but that he was concerned that the increased total from 625 to 900 patients may not withstand an audit. Mr. Maher further explained that he was simply looking for justification for the increased headcount, particularly because A&M had advised him that the original method of counting was correct,

36. In response, the next day, April 25, 2020, Mr. Detor sent Mr. Maher an email stating that it would not always be possible to defend NHCC's actions, that there were grey areas, that his job was to benefit the hospital and not obsess over "tic and tying," and that "an overly conservative approach is to the detriment of the institution." Mr. Detor stated that the objective was to take whatever actions NHCC determined will help it in the future, that corrections can always be made, and that it was in NHCC's "best interest to be in the position of asking for forgiveness and not permission."

37. Mr. Maher was astounded that Mr. Detor was cavalierly justifying the making of misrepresentations in an application for federal funds, which, as set forth above, could subject NHCC and its officers to potential civil and criminal liability.

38. Mr. Detor and Mr. Maher subsequently spoke by phone.

39. During the call, Mr. Detor screamed at Mr. Maher for a sustained period, again accusing him of "not being a team player," but this time stating that he knew he was "engaging in whistleblowing activity," saying that his behavior would "not be tolerated," and that the whistleblowing was one of the reasons Mr. Maher would be terminated.

40. Ultimately, the higher patient number was submitted. Mr. Detor later told NHCC's Board that this resulted in increased federal funding of $20 million, for a total grant amount in excess of $70 million.

41. Based on Mr. Detor's threats, Mr. Maher was concerned that that Mr. Detor would retaliate against him and retained counsel. On May 12, 2020, Mr. Maher's counsel wrote NHCC to put it on notice of Mr. Maher's claims, including claims for whistleblower retaliation in violation of New York Labor Law § 741. On May 14, 2020, Mr. Detor informed Mr. Maher that his employment was suspended.

42. On June 11, 2020, NHCC terminated Mr. Maher's employment, effective June 12, 2020.

### C. By Terminating Mr. Maher Without Cause and Without the Required Notice, NHCC Breached Mr. Maher's Employment Agreement.

43. As set forth above, Mr. Maher's employment agreement required NHCC to provide him with 365 days' notice before terminating him without cause.

44. The employment agreement defines "cause" narrowly. Cause was limited to situations involving serious and willful misconduct, including commission of a crime or embezzlement, and for other types of misconduct generally requiring notice and an opportunity to cure.

45. The employment agreement stated explicitly that "[c]ause does not include bad judgment or any act or omission reasonably believed by the Employee, in good faith, to have been in the best interests of Employer."

46.     Given that there was no cause for Mr. Maher's termination, NHCC was obligated to provide him with 365 days' notice. By failing to provide him with that notice, NHCC breached the employment agreement.

## FIRST CLAIM FOR RELIEF
(Retaliation in Violation of Federal False Claims Act)

47.     Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

48.     Defendant retaliated against Plaintiff in violation of the anti-retaliation provisions of the False Claims Act, 31 U.S.C. § 3730(h), by terminating his employment in retaliation for his opposition to what Plaintiff reasonably believed to be Defendant's submission of a false claim to HHS for CARES Act funds in connection with treatment of COVID-19-positive patients.

## SECOND CLAIM FOR RELIEF
(Retaliation in Violation of N.Y. Labor Law § 740)

49.     Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

50.     Defendant retaliated against Plaintiff for his opposition to, and disclosure to a supervisor of, conduct constituting health care fraud within the meaning of New York Labor Law § 740.

## THIRD CLAIM FOR RELIEF
(Breach of Contract)

51.     Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

52. Defendant breached Mr. Maher's employment agreement by terminating him without cause and failing to provide him with the notice required under the agreement.

WHEREFORE, Plaintiff demands a judgment:

1. Reinstating Plaintiff's employment with Defendants and upon reinstatement, enjoining Defendant from retaliating against him for his complaints concerning false claims or health care fraud in the terms and conditions of his employment;

2. Awarding Plaintiff back pay, and on Plaintiff's False Claims Act claims two times the back pay;

3. Awarding Plaintiff special damages, including but not limited to damages for emotional distress;

4. Awarding Plaintiff damages for breach of contract;

5. Awarding reasonable attorneys' fees, costs, and expenses, and

Granting such other legal and equitable relief to the Plaintiff as the Court may deem just and equitable.

## **JURY DEMAND**

Plaintiff demands trial by jury of all issues as of right by a jury.

Dated:     New York, New York
           August 24, 2020

                    GISKAN, SOLOTAROFF & ANDERSON LLP


                    s/_____
           By:      Jason L. Solotaroff
                    Amy Robinson
                    90 Broad Street, 10th Floor
                    New York, New York 10004
                    646-964-9640
                    jsolotaroff@gslawny.com
                    *ATTORNEYS FOR PLAINTIFF*